UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

COINMINT, LLC,

                    Plaintiff,

v.                                                                    8:18-CV-1404
                                                                      (GTS/CFH)
                                                                      (Lead Case)
MAIN MILL STREET INVESTMENTS, LLC; and
REX JACOBSMA,

                    Defendants.
_____

MAIN MILL STREET INVESTMENTS, LLC,

                    Plaintiff,
                                                                      8:19-CV-0328
v.                                                                    (GTS/CFH)
                                                                      (Member Case)
COINMINT, LLC; and ASHTON SONIAT,

                    Defendants.
_____

COINMINT, LLC; and ASHTON SONIAT,

                    Counter-Plaintiffs,
                                                                      8:19-CV-0328
v.                                                                    (GTS/CFH)
                                                                      (Member Case)
MAIN MILL STREET INVESTMENTS, LLC,

                    Counter-Defendant.
_____

COINMINT, LLC; and ASHTON SONIAT,

                    Third-Party Plaintiffs,
                                                                      8:19-CV-0328
v.                                                                    (GTS/CFH)
                                                                      (Member Case)
REX JACOBSMA,

                    Third-Party Defendant.
_____

APPEARANCES:                                    OF COUNSEL:

LAW OFFICES OF RODRIGO Da SILVA, P.A.           RODRIGO Da SILVA, ESQ.
   Counsel for Plaintiff
777 Arthur Godfrey Road, Suite 402
Miami, FL 33140

WHITEMAN OSTERMAN & HANNA LLP                   GABRIELLA LEVINE, ESQ.
   Counsel for Defendants                       JOHN E. CRAIN, JR., ESQ.
One Commerce Plaza, Suite 1900                  JOHN J. HENRY, ESQ.
Albany, NY 12260

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

Currently before the Court, in this breach-of-contract dispute between Coinmint, LLC

("Coinmint") and Main Mill Street Investments, LLC and Rex Jacobsma (collectively

"Defendants"), are the following two motions: (1) Defendants' motion to dismiss Coinmint's

Amended Complaint; and (2) Coinmint's motion for sanctions, including an order allowing it to

retrieve property and for attorney's fees and costs.  (Dkt. No. 9; Dkt. No. 30 in Case No. 8:19-

CV-0328.)[1]  For the reasons set forth below, Defendants' motion is granted in part and denied in

part, and Coinmint's motion is denied.

## I.    RELEVANT BACKGROUND

### A.    Coinmint's Amended Complaint

Generally, in its Amended Complaint, Coinmint asserts two claims.  (Dkt. No. 13

---

[1]    As indicated by the caption of this Decision and Order, Main Mill has also filed suit against Coinmint and Ashton Soniat.  *See* Case No. 8:19-CV-0328 (GTS/CFH).  On July 9, 2019, these actions were consolidated, with the instant action designated as the lead case and Main Mill's action designated as the member case.  (Dkt. No. 23 [Text Order filed July 9, 2019, of Member Case No. 8:19-CV-0328].)

[Coinmint's Am. Compl.].)  First, Coinmint claims that Jacobsma fraudulently induced it to execute a building lease in that (a) he made material representations related to Main Mill's intent to afford Coinmint the opportunity to obtain additional space in the building in the future, and (b) he made omissions of material fact as to Main Mill's intent to take over infrastructure installed by Coinmint.  (*Id.* at ¶¶ 28-37.)

Second, Coinmint claims that Main Mill breached the lease by refusing to honor the addendum to the lease that specified that Main Mill would lease Coinmint additional space if requested and if such space was available at that time.  (*Id.* at ¶¶ 38-45.)  In particular, Coinmint alleges that it had performed its obligations under the lease at all relevant times and that Main Mill had not provided written notice of any default through June 2017.  (*Id.* at ¶ 44.)

**B.      Parties' Briefing on Defendants' Motion**

**1.      Defendants' Memorandum of Law[2]**

Generally, in support of their motion, Defendants make three arguments.[3]  (Dkt. No. 9, Attach. 6, at 8-13 [Main Mill's Mem. of Law].)  First, Defendants argue that Coinmint's breach-of-contract claim must be dismissed because it has failed to plead its own compliance with

---

[2]      The Court notes that this motion and memorandum of law were filed before Coinmint filed its Amended Complaint.  (Dkt. No. 9; Dkt. No. 13.)  On February 14, 2019, the Court indicated that Main Mill's motion would be directed to the Amended Complaint.  (Text Notice filed Feb. 14, 2019].)

[3]      The Court notes that, although Defendants initially argued that there was no subject-matter jurisdiction alleged in the Complaint, the Amended Complaint added allegations of the citizenship of the two members of Coinmint, and Defendants have not renewed their challenge to the existence of subject-matter jurisdiction in their reply memorandum of law.  (Dkt. No. 13, at ¶ 6 [Coinmint's Am. Compl.]; Dkt. No. 21.)  Defendants therefore have abandoned that challenge as a result of the Amended Complaint and the Court nonetheless finds that the Amended Complaint adequately pleads facts establishing subject-matter jurisdiction.

and/or performance under the lease.  (*Id.* at 9-10.)  More specifically, Defendants argue that

Coinmint has failed to make even a general allegation that it was not in default or that it

otherwise performed all of its obligations under the lease, and that such failure is fatal to any

claim for breach of contract under New York law (and in this case in particular given that the

relevant lease provision was explicitly premised on Coinmint not being in default).  (*Id.*)

Second, Defendants argue that Coinmint's fraudulent inducement claim must also be

dismissed because Coinmint's generalized and conclusory allegations do not meet the higher

pleading standard required by Fed. R. Civ. P. 9(b).  (*Id.* at 10-12.)  More specifically, Defendants

argue that Coinmint has not provided any factual allegations giving the details of the alleged

material and fraudulent misrepresentations or explaining where or when those misrepresentations

were made or how they were fraudulent.  (*Id.*)

Third, Defendants argue that Coinmint's claim of fraudulent inducement must be

dismissed because it is duplicative of its breach-of-contract claim in that both claims are based

on the provision of the lease allowing Coinmint to lease additional space.  (*Id.* at 12-13.)

## 2.  Coinmint's Opposition Memorandum of Law

Generally, in opposition to Defendants' motion, Coinmint makes three arguments.  (Dkt.

No. 20, at 2-6 [Coinmint's Opp'n Mem. of Law].)  First, Coinmint argues that it has sufficiently

pled a claim for breach of contract in the Amended Complaint by alleging in Paragraph 44 that

"[a]t all relevant times related to this action, [Coinmint] fully performed its obligations under the

Lease (i.e., payment of monthly rent, internet, electricity charges and security deposit)."  (*Id.* at 2-

3.)  More specifically, Coinmint argues that these factual allegations are specific as to the ways in

which it complied with the terms of the lease, and that any argument by Defendants that

4

Coinmint breached other provisions of the lease not encompassed by the specifics outlined in the Amended Complaint would be unsupported.  (*Id.*)

Second, Coinmint argues that its fraudulent inducement claim is sufficiently pled based on the various factual allegations included in the Amended Complaint, including that (a) Jacobsma knew that Coinmint would eventually require a larger space to run its business as intended, (b) Jacobsma agreed to include a provision allowing expansion into a larger space in the lease, (c) Jacobsma drafted the lease to include that provision, (d) Coinmint executed the lease in reliance on those promises and would not have executed the lease without them, (e) Coinmint was informed after execution that Main Mill always intended to defraud Coinmint, and (f) Jacobsma agreed to the expansion option provision to induce Coinmint to execute the lease. (*Id.* at 4-6.)

Third, Coinmint argues that its fraudulent inducement claim is not duplicative of its breach-of-contract claim because the claims are asserted against different parties.  (*Id.* at 6.)

### 3. Defendants' Reply Memorandum of Law

Generally, in reply to Coinmint's opposition memorandum of law, Defendants make three arguments.  (Dkt. No. 21, at 5-14 [Main Mill's Reply Mem. of Law].)  First, Defendants again argue that the fraudulent inducement claim is duplicative of the breach-of-contract claim.  (*Id.* at 5-9.)  More specifically, Defendants argue that (a) the fraudulent inducement claim is based solely on the negotiation and execution of the lease, (b) a claim that a defendant had no intention of performing a contract when it was entered into is more properly asserted as a breach of contract than as a fraudulent inducement, and (c) Coinmint does not argue that Jacobsma, as representative for Main Mill, promised it anything that was not contained in the lease.  (*Id.*)

Defendants argue that Coinmint's attempt to overcome the duplicitive nature of these claims by asserting the fraudulent inducement claim against Jacobsma (rather than against Main Mill) in the Amended Complaint is not effective because the Amended Complaint does not include any factual allegations plausibly suggesting that Jacobsma was acting in an individual capacity rather than for Main Mill when engaging in the alleged wrongful actions, and that, without any such allegations, Jacobsma cannot be held individually liable. (*Id.*)

Second, Defendants argue that the factual amendments made to Coinmint's breach-of-contract claim do not sufficiently plead that Coinmint satisfied its obligations under the lease. (*Id.* at 9-13.) More specifically, Defendants argue that the additional factual allegations comprise only some of Coinmint's obligations under the lease and Defendants have consistently argued that Coinmint has committed other breaches not encompassed by those allegations. (*Id.*) Defendants also argue that, in the alternative, the Court should convert this motion into one for summary judgment and consider evidence of these other breaches. (*Id.* at 12.)

Third, Defendants argue that Coinmint's fraudulent inducement claim has not been pled with sufficient particularity, in part because any new allegation made "on information and belief" is not sufficient to meet the pleading standard under Fed. R. Civ. P. 9(b). (*Id.* at 13-14.)

### C. Parties' Briefing on Coinmint's Motion

#### 1. Coinmint's Memorandum of Law

Generally, in support of its motion, Coinmint makes three arguments. (Dkt. No. 30, Attach. 6, at 13-18 of Member Case No. 8:19-CV-0328 [Coinmint's Mem. of Law].) First, Coinmint argues that Main Mill's bad-faith actions through its pursuit of an ex parte temporary restraining order in state court and subsequent request for a preliminary injunction (and its later

withdrawal of that request) warrant an order permitting Coinmint to retrieve its property from the formerly leased premised. (*Id.* at 13-16.) More specifically, Coinmint argues that the Court has the inherent power to issue an appropriate sanction for conduct that abuses the judicial process, and that Main Mill's conduct (which essentially gave Main Mill control over Coinmint's property) was such an abuse. (*Id.*)

Second, Coinmint argues that, in the alternative, Main Mill should be required to post security as a condition of holding Coinmint's property if the Court finds that Main Mill showed all the requirements for entitlement to a preliminary injunction. (*Id.* at 17.)

Third, Coinmint argues that it is entitled to an award of costs and attorney's fees incurred as a result of Main Mill's wrongful conduct, in particular, the cost of defending against the motion for preliminary injunction that Main Mill later withdrew. (*Id.* at 18.)

### 2. Defendants' Opposition Memorandum of Law

Generally, in opposition to Coinmint's motion, Defendants make five arguments. (Dkt. No. 31, at 16 of Member Case No. 8:19-CV-0328 [Main Mill's Opp'n Mem. of Law].) First, Defendants argue that Coinmint's motion for sanctions should be denied because it improperly seeks the ultimate relief sought in this lawsuit (i.e., return of Coinmint's electrical transformer). (*Id.* at 16-18.)

Second, Defendants argue that Coinmint's requested relief is essentially a request for a mandatory preliminary injunction in that the requested action would alter the status quo, but that Coinmint has not satisfied the requirements for obtaining a mandatory preliminary injunction, in particular, the requirement to show irreparable harm and a substantial likelihood of success on the merits. (*Id.* at 18.)

Third, Defendants argue that Coinmint has not established that sanctions are warranted under the Court's inherent power.  (*Id.* at 19-26.)  More specifically, Defendants argue that (a) their decision to seek a temporary restraining order in state court while the federal case was already pending was for a legitimate reason because the claims in the federal action were not the same as those related to the requested injunctive relief in that Main Mill's failure to grant Coinmint additional space under the lease provisions (the basis for the current federal claims) has nothing to do with who owns the transformer, (b) Defendants would have had to withdraw their fully briefed pending motion to dismiss to file that request in the federal court, (c) Defendants gave Coinmint notice and copies of their papers related to that state court application and did not oppose allowing Coinmint an opportunity to respond, and (d) Defendants' withdrawal of the motion for preliminary injunction was necessary because the danger of irreparable harm dissipated once Coinmint vacated the leased premises, which occurred while that motion was pending decision.  (*Id.*)  Defendants note that the withdrawal of the motion for preliminary injunction in no way resolved the question of who owns the transformer, and such dispute is still properly before this Court regardless of who has possession of that transformer.  (*Id.* at 25-26.)

Fourth, Defendants argue that sanctions are not warranted because their conduct was not the but-for cause of any of Coinmint's alleged damages, but rather it was Coinmint's own actions in removing fixtures from the leased premises that led to Main Mill seeking a temporary restraining order and preliminary injunction.  (*Id.* at 26-27.)

Fifth, Defendants argue that they should not be required to post a bond because they have withdrawn their motion for a preliminary injunction and acknowledge that they are no longer entitled to a preliminary injunction based on the cessation of the threat of irreparable harm.  (*Id.*

at 27-28.)

## II.    GOVERNING LEGAL STANDARDS

It has long been understood that a dismissal for failure to state a claim upon which relief

can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds:

(1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a

challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cnty.*, 549 F. Supp.2d

204, 211 nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J.) (adopting Report-Recommendation on *de*

*novo* review).

Because such dismissals are often based on the first ground, some elaboration regarding

that ground is appropriate.  Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a

pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to

relief."  Fed. R. Civ. P. 8(a)(2) [emphasis added].  In the Court's view, this tension between

permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement

to relief is often at the heart of misunderstandings that occur regarding the pleading standard

established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading

standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal."  *Jackson*, 549 F. Supp. 2d at

212 n.20 (citing Supreme Court case).  On the other hand, the Supreme Court has held that, by

requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2)

requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the

plaintiff's claim is and the grounds upon which it rests."  *Jackson*, 549 F. Supp. 2d at 212 n.17

(citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F. Supp. 2d at 212 n.18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F. Supp. 2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp. 2d at 213 n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 560-61, 577. Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id*. at 555-70. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id*. at 555. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible

level],” assuming (of course) that all the allegations in the complaint are true. *Id*.

As for the nature of what is “plausible,” the Supreme Court explained that “[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.” *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). “[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief.” *Iqbal*, 129 S. Ct. at 1950 (internal quotation marks and citations omitted). However, while the plausibility standard “asks for more than a sheer possibility that a defendant has acted unlawfully,” *id*., it “does not impose a probability requirement.” *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, “the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice.” *Iqbal*, 129 S. Ct. at 1949. Similarly, a pleading that only “tenders naked assertions devoid of further factual enhancement” will not suffice. *Iqbal*, 129 S. Ct. at 1949 (internal citations and alterations omitted). Rule 8 “demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.” *Id.* (citations omitted).

Additionally, when alleging fraud or mistake, “a party must state with particularity the circumstances constituting fraud or mistake,” although malice, intent, knowledge, and other

conditions of the person's mind need only be generally alleged. Fed. R. Civ. P. 9(b). As to the circumstances of the fraud, "the complaint must '(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent.'" *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Secs., LLC*, 797 F.3d 160, 171 (2d Cir. 2015) (quoting *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 187 [2d Cir. 2004]). As to the defendant's mental state, although the heightened pleading standard does not apply, the plaintiff "must nonetheless allege facts 'that give rise to a strong inference of fraudulent intent.'" *Loreley Fin.*, 797 F.3d at 171 (quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290-91 [2d Cir. 2006]). "In determining the adequacy of [the plaintiff's] fraud pleadings under these various requirements, we view the alleged facts in their totality, not in solation." *Loreley Fin.*, 797 F.3d at 171 (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-23 [2007]).

Finally, a few words are appropriate regarding what documents are considered when a dismissal for failure to state a claim is contemplated. Generally, when contemplating a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters outside the four corners of the complaint may be considered without triggering the standard governing a motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4)

any matter of which the court can take judicial notice for the factual background of the case.[4]

## III.    ANALYSIS

### A.    Whether Coinmint Has Sufficiently Pled a Claim for Breach of Contract

After careful consideration, the Court answers this question in the affirmative for the

reasons stated in Coinmint's opposition memorandum of law.  (Dkt. No. 20, at 2-3 [Coinmint's

Opp'n Mem. of Law].)  To those reasons, the Court adds the following analysis.

"To survive a motion to dismiss for a breach of contract claim under New York law, the

complaint must allege facts which show: '(1) the existence of an agreement, (2) adequate

---

[4]    *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC*, No. 10-573, 2011 WL 2135734, at *1 (2d Cir. June 1, 2011) (explaining that conversion from a motion to dismiss for failure to state a claim to a motion for summary judgment is not necessary under Fed. R. Civ. P. 12[d] if the "matters outside the pleadings" in consist of [1] documents attached to the complaint or answer, [2] documents incorporated by reference in the complaint (and provided by the parties), [3] documents that, although not incorporated by reference, are "integral" to the complaint, or [4] any matter of which the court can take judicial notice for the factual background of the case); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (explaining that a district court considering a dismissal pursuant to Fed. R. Civ. 12(b)(6) "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. . . .  Where a document is not incorporated by reference, the court may neverless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint. . . . However, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document.  It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.") [internal quotation marks and citations omitted]; *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2009) ("The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (internal quotation marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may nevertheless take the document into consideration in deciding [a] defendant's motion to dismiss, without converting the proceeding to one for summary judgment.") (internal quotation marks and citation omitted).

performance of the contract by the plaintiff, (3) breach of the contract by the defendant, and (4) damages.'" *Habitzreuther v. Cornell Univ.*, 14-CV-1229, 2015 WL 5023719, at *5 (N.D.N.Y. Aug. 25, 2015) (Sharpe, J.) (quoting *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 177 [2d Cir. 2004]).

In arguing that Coinmint has not sufficiently pled a claim for breach of contract, Defendants specifically argue that the second element is in dispute because Coinmint's allegations in the Amended Complaint that it performed its obligations under the lease to pay monthly rent, internet, electricity charges, and security deposit do not cover the range of obligations that it owed under the lease. (Dkt. No. 21, at 9-13 [Main Mill's Reply Mem. of Law].) Coinmint argues both that its factual allegations are sufficient and that Main Mill has not provided any factual support for its assertion that Coinmint breached other portions of the lease and has not even specified which provisions it argues have been breached. (Dkt. No. 20, at 3-4 [Coinmint's Opp'n Mem. of Law].)

As an initial matter, the Court notes that the evidence attached to Defendants' memorandum of law that is meant to support its argument that Coinmint breached other portions of the lease not related to paying rent, internet, electricity charges, and the security deposit cannot be considered on a motion to dismiss for failure to state a claim because such evidence (consisting of letters between the parties and/or their attorneys) is not attached to the Amended Complaint, incorporated by reference in the Amended Complaint, integral to the Amended Complaint, or otherwise subject to judicial notice. Defendants specifically acknowledge in their memorandum of law-in-chief that their motion "is based solely upon the allegations (or lack thereof) in the Complaint," and "not premised upon the documents" submitted with their motion,

and in their reply memorandum of law that the relevant evidence "was submitted for background information only, and this motion does not rely upon [that evidence]." (Dkt. No. 21, at 9-10 [Main Mill's Reply Mem. of Law].) Defendants therefore clearly recognize that such evidence is not appropriate for consideration on a motion to dismiss.

Absent consideration of this extrinsic evidence, the Court cannot say that Coinmint has failed to allege facts plausibly suggesting that it performed under the lease for the purposes of surviving a motion to dismiss. As discussed above, Coinmint alleged in the Amended Complaint that it "fully performed its obligations under the Lease (i.e., payment of monthly rent, internet, electricity charges and security deposit)," and that Main Mill did not provide any written notice of default at any time prior to or during the period of January through June 2017. (Dkt. No. 13, at ¶ 44 [Am. Compl.].) Defendants appear to place great weight on the fact that Coinmint used "i.e." rather than a less inclusive introducing term such as "e.g." or "including" to support its argument that Coinmint has failed to allege that it complied with all parts of the lease rather than just the provisions related to the enumerated payment obligations. (Dkt. No. 21, at 10-11 [Main Mill's Reply Mem. of Law].) However, given the length of the lease (18 pages with 50 sections, not including subsections, as well as an addendum with an additional 17 sections) and the volume of provisions that may or may not give rise to an obligation that can result in default, the Court finds that the "short and plain statement" requirement applicable to complaints would not require Coinmint to specifically state every single obligation that might be found in the lease in order to have alleged performance of the agreement. The Court finds that Cointmint's allegation that it fully performed its obligations, the provision of examples of those obligations, and its allegation that it did not receive any notice of default from Defendants in the six months after

when it requested additional space suffice (albeit barely) to plausibly state that it performed its obligations under the lease.

The Court additionally notes that, having reviewed the extrinsic evidence (without considering it for the purposes of the above analysis of the sufficiency of the factual allegations) determining whether Coinmint actually breached the relevant provisions would require a more extensive interpretation of the various contractual provisions that Defendants assert Coinmint breached to determine whether the lease in fact imposes such obligations. Additionally, the lease itself, read in conjunction with the Amended Complaint, does not clearly suggest a breach of any lease provision beyond those for which Coinmint provided factual allegations that would enable this Court to determine that Defendants are entitled to dismissal based on an inability to state a claim upon which relief can be granted as a matter of law. Rather, the determination of whether any of the lease provisions were breached would require consideration of evidence outside the Amended Complaint, and thus is more suited to resolution on a motion for summary judgment.

Lastly, the Court denies Defendants' request to convert this motion into a motion for summary judgment to resolve this issue. Generally, "[w]hen a district court converts a motion to dismiss into one for summary judgment, 'all parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.'" *Sahu v. Union Carbide Corp.*, 548 F.3d 59, 67 (2d Cir. 2008) (quoting Fed. R. Civ. P. 12[d]). "The essential inquiry is whether the appellant should reasonably have recognized the possibility that the motion might be converted into one for summary judgment or was taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleadings." *Sahu*, 548 F.3d at 67 (quoting *In re G. & A. Books, Inc.*, 77 F.2d 288, 295 [2d Cir. 1985]). The Second Circuit has held that "'[a] party

cannot complain of lack of a reasonable opportunity to present all material relevant to a motion for summary judgment when both parties have filed exhibits, affidavits, counter-affidavits, depositions, etc. in support of an in opposition to a motion to dismiss.'" *Sahu*, 548 F.3d at 67 (quoting *In re G. & A. Books, Inc.*, 77 F.2d at 295).

The Court finds that the facts and circumstances of this case do not suggest sufficient notice to effect a conversion without allowing Coinmint a further opportunity to respond. Although Defendants submitted extrinsic evidence attached to their memorandum of law-in-chief that would be relevant to this issue, they did not request conversion until their reply memorandum of law, and therefore Coinmint was not under notice of the intent to convert until after it had already responded to Defendants' motion. (Dkt. No. 9, Attach. 6, at 9-10 [Main Mill's Mem. of Law]; Dkt. No. 21, at 12 [Main Mill's Reply Mem. of Law].) Additionally, although Defendants are correct that Coinmint submitted extrinsic materials with its opposition memorandum of law, those materials are unrelated to the contract and fraud issues asserted in the Amended Complaint. Rather, they consist of a series of emails between counsel for the parties regarding who owns the transformer at the leased property and whether that question of ownership had been resolved by the parties' settlement agreement. (Dkt. No. 20, at 8-11.)[5] Based on the circumstances, the Court finds that Coinmint did not have the notice required to merit converting this motion into one for summary judgment without allowing Coinmint further opportunity to respond and submit evidence (and perhaps conduct discovery).

For all of the above reasons, Defendants' motion to dismiss Coinmint's breach-of-

---

[5] Coinmint states in its opposition memorandum of law that these emails are evidence of Defendants' fraudulent intent in making the contract; but this Court does not agree.

contract claim must be denied.

**B.      Whether Coinmint Has Sufficiently Pled an Independent Claim for Fraudulent Inducement**

After careful consideration, the Court answers this question in the negative for the reasons stated in Defendants' memoranda of law.  (Dkt. No. 9, Attach. 6, at 12-13 [Main Mill's Mem. of Law]; Dkt. No. 21, at 5-9 [Main Mill Reply Mem. of Law].)  To those reasons, the Court adds the following analysis.

Generally, "a fraud claim may not be used as a means of restating what is, in substance, a claim for breach of contract."  *Wall v. CSX Transp., Inc.*, 471 F.3d 410, 416 (2d Cir. 2006).  "[A] fraudulent inducement claim is duplicative of a contract claim when it is premised upon an alleged breach of contractual duties and the supporting allegations do not concern representations which are collateral or extraneous to the terms of the parties' agreement."  *Donnenfeld v. Petro, Inc.*, 333 F. Supp. 3d 208, 221 (E.D.N.Y. 2018) (internal quotation marks omitted).  However, a claim for fraudulent inducement is independent of a claim for breach of contract "when the alleged misrepresentation concerns a matter collateral to the contract between the parties."  *Donnenfeld*, 333 F. Supp. 3d at 221.  In other words, "a plaintiff may . . . maintain parallel contract and tort actions where the allegations 'involve misstatements and omissions of present facts [to induce the other party to enter into the contract], not contractual promises regarding prospective performance.'"  *Capax Discovery, Inc. v. AEP RSD Investors, LLC*, 285 F. Supp. 3d 579, 587 (W.D.N.Y. 2018) (quoting *Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 500 F.3d 171, 184 [2d Cir. 2007]).  To show that the two claims are separate, a plaintiff must do the following: "(i) demonstrate a legal duty separate from the duty to perform under the contract; or

(ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages." *Cicel (Beijing) Science & Tech. Co., Ltd. v. Misonix, Inc.*, 17-CV-1642, 2017 WL 4535933, at *10 (E.D.N.Y. Oct. 7, 2017) (internal quotation marks omitted). New York courts have recently found that a fraud claim is duplicative where it arises from the same facts and alleges the same damages as the breach-of-contract claim and merely adds conclusory allegations that the defendant made a promise to perform obligations under the contract while harboring a concealed intent not to perform that obligation. *Cronos Gr. Ltd. v. XcomIP, LLC*, 64 N.Y.S.3d 180, 186 (N.Y. App. Div. 1st Dept 2017) (collecting cases).

Coinmint does not appear to object to Defendants' substantive arguments about whether the claim itself is duplicative, but rather merely argues that such analysis is irrelevant because the breach-of-contract claim and fraudulent inducement claims are asserted against different parties, and thus the fraudulent inducement claim against Jacobsma cannot be duplicative of the breach-of-contract claim against Main Mill. (Dkt. No. 20, at 6 [Coinmint's Opp'n Mem. of Law].) "[A] fraud claim may be dismissed as duplicative only as against a defendant against whom the related contract claim is viable," and, thus, "a plaintiff who is induced to enter into a contract with a company due to fraudulent misrepresentations by that company's president may assert a fraudulent inducement claim against the president." *Wild Bunch, S.A. v. Vendian Entm't, LLC*, 256 F. Supp. 3d 497, 503 (S.D.N.Y. 2017); *accord, Sun Prods. Corp. v. Bruch*, 507 F. App'x 46, 48 (2d Cir. 2013); *cf. Forty Cent. Park S., Inc. v. Anza*, 14 N.Y.S.3d 11, 12 (N.Y. App. Div. 1st Dept 2015) (finding that a fraud cause of action against the manager of an LLC was not duplicative of the breach of contract cause of action because it was based on representations

made by the manager that were separate and distinct from the LLC's obligations under the agreement).

Coinmint in particular argues that the breach-of-contract claim is against Main Mill only, that the fraudulent inducement claim is directed at Jacobsma only, and that Jacobsma is not a party to the lease or the addendum. (Dkt. No. 20, at 6 [Coinmint's Opp'n Mem. of Law].) However, the lease itself does not support Coinmint's argument. In particular, although the lease notes Main Mill to be the lessor, it lists Jacobsma under the lessor signatory section as "manager - authorized officer"; although Coinmint provided an unsigned copy of the lease, this suggests that Jacobsma was a party to the lease in his capacity as manager and authorized officer of Main Mill. (Dkt. No. 13, at 26-27.) Additionally, the Amended Complaint alleges that (a) the conversations between Jacobsma and Coinmint's managing member in August and September 2016 during negotiations were about the terms for the lease, during which "*Main Mill* understood and agreed to [Coinmint's] terms" to include an option to expand to a larger or additional space and drafted the lease and addendum accordingly, and (b) Jacobsma made an omission of material fact by not disclosing that Main Mill was entering into the lease so that Coinmint would install infrastructure that *Main Mill* could later take over. (Dkt. No. 13, at ¶¶ 12-15, 30 [Am. Compl.] [emphasis added].) Other factual allegations in the Amended Complaint also undermine Coinmint's allegation that it is Jacobsma, acting as an individual and not as a member of Main Mill, who made the alleged misrepresentations. (*Id.* at ¶ 23 ["*Defendant* induced Plaintiff into the entering into the lease agreement with the expansion rights . . . "]; ¶ 27 ["*Defendants* represented in multiple meetings, communications, and finally in the lease addendum . . . "].) The lease and Coinmint's allegations therefore do not plausibly suggest that (a) Jacobsma was

acting on his own behalf rather than on behalf of Main Mill, and (b) those alleged representations nonetheless were not separate and distinct from the obligations on Main Mill imposed by the lease itself. *Forty Cent. Park S., Inc.*, 14 N.Y.S.3d at 12.

In this case, the alleged fraudulent misrepresentation (i.e., that Coinmint would be able to lease more space in the future upon request) is the same as the alleged contractual breach (i.e., that Main Mill failed to comply with the contractual provision allowing Coinmint to lease more space upon request). Coinmint does not allege that Jacobsma made any misrepresentation or promise to induce him to enter into the lease other than the promise that the lease would contain an addendum allowing Coinmint to lease additional space upon request. The alleged misrepresentation was therefore not collateral to the lease, but rather part of the terms of the lease itself. In particular, Coinmint does not allege that the alleged misrepresentations made by Jacobsma before execution of the contract misrepresented what was eventually included in the contract; rather, Coinmint alleges merely that both Jacobsma and the lease promised the ability to lease more space in the future while having no intention to comply with that promise. *Cf. FPP, LLC v. Xaxis US, LLC*, 14-CV-6172, 2015 WL 5123129, at *4 (S.D.N.Y. Sept. 1, 2015) (finding that a promise about the terms of the contract that induced plaintiff to execute that contract were collateral to the contract because that promise was inconsistent with the actual terms of the contract plaintiff signed). Coinmint's fraud claim is therefore not based on any allegation that Jacobsma misrepresented the terms of the contract in order to induce Coinmint to sign it, but rather that Jacobsma harbored a concealed intent not to perform the terms of the lease itself in the

future.[6]  As discussed by the case law noted above, such allegations, without more, have been found to lack a collateral aspect to state a separate cause of action for fraud.  Nor has Coinmint alleged facts plausibly suggesting that Jacobsma owed it a duty beyond that afforded by the lease or that it suffered special non-contractual damages as a result of Jacobsma's alleged misrepresentation.

Additionally, as to Coinmint's inclusion of the alleged omission of material fact as an independent basis for its fraudulent inducement claim, "[w]here the fraud is based on alleged omission of material fact . . . the plaintiff must show that the defendant had a duty to disclose." *Tarzy v. Dwyer*, 18-CV-1456, 2019 WL 132280, at *10 (S.D.N.Y. Jan. 8, 2019); *United States v. Szur*, 289 F.3d 200, 211 (2d Cir. 2002) ("[W]hen dealing with a claim of fraud based on material omissions, it is settled that a duty to disclose 'arises only when one party has information that the other party is entitled to know because of a fiduciary or other similar relation of trust and confidence between them.'").  However, to the extent that Defendants' intentions amounted to a omission of material fact, Coinmint has not made any allegation that either Jacobsma or Main Mill had a duty to disclose those omissions to Coinmint.  Coinmint therefore has not alleged facts plausibly suggesting that this alleged omission would be a basis for finding that his

---

[6]  The Court notes that Coinmint's allegation that Jacobsma made "omissions of material fact" by failing to disclose that Main Mill was entering the lease so that Coinmint would install infrastructure Main Mill could later take over are essentially allegations that Jacobsma and Main Mill did not intend to comply with the terms of the lease at the time it was entered into. (Dkt. No. 13, at ¶ 30 [Am. Compl.].)  In particular, the Amended Complaint, read as a whole, alleges that Jacobsma and Main Mill had no intention of giving Coinmint more space as promised in the addendum to the lease despite knowing that Coinmint allegedly needed additional space to run its business as planned.  Consequently, whatever the reason was for not wanting to comply with the lease, it still amounts only to a lack of intent to comply with the lease terms.

fraudulent inducement claim is separate and distinct from his contract claim.

Regardless of whether Coinmint's fraudulent inducement claim must be dismissed as duplicative of his breach-of-contract claim, the Court nonetheless finds that, in the alternative, this claim must be dismissed for failure to state a claim upon which relief can be granted. "Under New York law, to sustain a claim for fraudulent inducement, a plaintiff must successfully allege (1) a knowingly false representation of a material fact and (2) detrimental reliance thereon." *Robinson v. Deutsche Bank Trust Co. Ams.*, 572 F. Supp. 2d 319, 322 (S.D.N.Y. 2008). The false representation can be either a misrepresentation or the material omission of a fact. *Robinson*, 572 F. Supp. 2d at 322.

As discussed above, Coinmint has not alleged that Jacobsma had a duty to disclose the alleged material fact about his intentions, and therefore this allegation of an omission cannot suffice as a false representation to support Coinmint's claim. The Court therefore need only discuss the alleged affirmative misrepresentations in the following analysis.

As the parties appear to agree, Coinmint's fraud claim is subject to the heightened pleading standard of Fed. R. Civ. P. 9(b), which, in particular, requires Coinmint to detail the statements that it alleges are fraudulent, the speaker, where and when those statements were made, and why they are fraudulent. *Loreley Fin.*, 797 F.3d at 171. The Amended Complaint includes the following relevant allegations: (1) during an in-person and phone discussion sometime between August and September 2016, Jacobsma and the owner of the relevant building represented to Coinmint's manager that "there was plenty of space in the 750,000 square foot Building for [Coinmint] to expand"; (b) Main Mill agreed to Coinmint's terms including an option to move or rent additional space; (c) the lease addendum contained the option to rent

additional space in the building in the future; (d) "Defendants represented in multiple meetings, communications, and finally in the lease addendum that they drafted that [Coinmint] would have the right to expand into 'any available space' in the building"; (e) Jacobsma "made material representations to induce [Coinmint] to execute the Lease"; and (f) Jacobsma drafted the lease including the relevant addendum. (Dkt. No. 13, at ¶¶ 12, 14-15, 17-18, 27, 33 [Am. Compl.].) Of these statements, the only ones specifically implicating Jacobsma are either not detailed ("i.e., "Jacobsma made material representaions") or not ostensibly fraudulent (i.e., that there was plenty of additional space in the 750,000 square foot building). The statement that "Defendants" (which renders it unclear if it was Main Mill, Jacobsma, or both making the alleged representations) made representations in "multiple meetings [and] communications" is not sufficiently specific because it does not indicate when those meetings or communications occurred. The only other statements are related to the drafting and execution of the lease. To the extent that Coinmint is alleging entitlement to relief based on pre-execution promises that the lease would contain a provision giving Coinmint the option to expand, such representation would not be fraudulent because the lease did in fact contain such a provision.

The only remaining representation is therefore contained in the actual lease provision itself. However, the only way in which Coinmint appears to attempt to explain why the lease provision was fraudulent is by alleging that Jacobsma did not intend to comply with the relevant provision. (Dkt. No. 13, at ¶¶ 37 [Am. Compl.].) However, "[g]eneral allegations that [a] defendant entered into a contract while lacking the intent to perform it are insufficient" to support a claim of fraudulent inducement. *Wall v. CSX Transp., Inc.*, 471 F.3d 410, 416 (2d Cir. 2006); *see PetEdge, Inc. v. Garg*, 234 F. Supp. 3d 477, 491 (S.D.N.Y. 2017) (collecting cases); *Vis*

*Vires Grp., Inc. v. Enonovo Therapeutics, Inc.*, 16-CV-0470, 2016 WL 6238528, at *9 (E.D.N.Y. Oct. 24, 2016) (collecting cases). The Court therefore finds that, even if Coinmint's fraudulent inducement claim were not duplicitive of its breach-of-contract claim, it nonetheless has failed to state a claim for fraudulent inducement under the standards of Fed. R. Civ. P. 9(b).

For all of the above reasons, Coinmint's claim for fraudulent inducement must be dismissed.

### C. Whether Coinmint Is Entitled to the Requested Sanctions

After careful consideration, the Court answers this question in the negative for the reasons stated in the Main Mill Defendants' opposition memorandum of law. (Dkt. No. 31 of Member Case No. 8:19-CV-0328 [Main Mill's Opp'n Mem. of Law].) To those reasons, the Court adds the following discussion.

Coinmint's motion specifically seeks sanctions under the Court's inherent powers rather than another authority allowing the imposition of sanctions. (Dkt. No. 30, Attach. 6, at 14 of Member Case No. 8:19-CV-0328 [Coinmint's Mem. of Law].) "Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates," and "[t]hese powers are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (internal quotation marks omitted). "Because of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers*, 501 U.S. at 44. Although the statutes and rules, without an expression of Congressional intent, do not supercede the court's inherent power, "when there is bad-faith conduct in the courts of litigation

25

that could be adequately sanctioned under the Rules, the court ordinarily should rely on the Rules rather than the inherent power." *Chambers*, 501 U.S. at 50. Where the court seeks to impose attorneys' fees or to punish behavior by an attorney occurring in conducting the litigation taken on behalf of the client, the court must make an explicit finding of bad faith. *United States v. Seltzer*, 227 F.3d 36, 41-42 (2d Cir. 2000). In addition to the bad-faith requirement, the Second Circuit has indicated that "inherent-power sanctions are appropriate only if there is clear evidence that the conduct at issue is (1) entirely without color [i.e., lacks any legal or factual basis] and (2) motivated by improper purposes." *Wolters Kluwer Fin. Servs., Inc. v. Scivantage*, 564 F.3d 110, 114 (2d Cir. 2009).

Assuming for the moment that the Court's inherent powers are the most appropriate basis for Coinmint's motion, the Court finds that there are no grounds to exercise them in this case. Although Magistrate Judge Hummel appropriately expressed skepticism about the reasons provided by Main Mill's counsel for seeking the temporary restraining order from the state court rather than this Court despite the fact that the federal action was already pending, the Court cannot conclude that there is clear evidence that such action was entirely without any legal or factual basis. As to Main Mill's counsel's withdrawal of the petition for preliminary injunction, counsel is likely correct that its petition was rendered moot as a result of Coinmint's vacation of the leased premises while that petition was pending given that the basis for irreparable harm in that petition depended on Coinmint having access to the premises and being able to remove various fixtures.

To the extent Coinmint's request could be construed as an application for a mandatory preliminary injunction, the Court agrees with the Main Mill Defendants that Coinmint has not

met the requirements for such relief.  In addition to the typical considerations of irreparable harm and either a likelihood of success on the merits or a sufficiently serious question on the merits and a balance of hardships decidedly tipping toward the requesting party, "[a] mandatory preliminary injunction should issue only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief." *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 405-06 (2d Cir. 2011).  Coinmint's alleged harm is neither irreparable nor extreme or very serious; although it alleges that loss of possession of the transformer results in a significant loss of profits and the need for them to purchase a new transformer at significant cost, it alleges no harm other than loss of money, which can easily be recovered later if they are found to be correct in their assertion of ownership of the transformer.  Nor has Coinmint established facts clearly showing that it is entitled to the transformer or a significant likelihood of success on the merits of that dispute.  Consequently, the Court finds no basis to grant Coinmint the requested relief under a theory that it is a requesting a mandatory preliminary injunction.

Nor can Coimint's request for sanctions be construed as arising under Fed. R. Civ. P. 11(c)(2) (to the extent that Rule may be applicable) because it has not complied with the directives of that Rule.  *See* Fed. R. Civ. P. 11(c)(2) ("A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violated Rule 11[b].  The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets.").

The only remaining question is whether Main Mill should be made to pay a bond or

security as a consequence of remaining in possession of the disputed transformer. However, the basis for Coinmint's arguments on this matter is Fed. R. Civ. P. 65(c), which relates to cases where a preliminary injunction or temporary restraining order is being issued by the Court. Fed. R. Civ. P. 65(c) ("The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained.") However, Coinmint does not cite any authority to support its contention that this security requirement applies in a case such as this one, where the court has not issued a preliminary injunction but Main Mill nonetheless remains in possession of the transformer as if it had been granted a preliminary injunction. (Dkt. No. 30, Attach. 6, at 17 [Coinmint's Mem. of Law].)

The Court disagrees with Coinmint's argument. Coinmint itself acknowledges that the state court temporary restraining order ("TRO") was issued on March 14, 2019. (Dkt. No. 30, Attach. 6, at 9 [Coinmint Mem. of Law].) Coinmint also acknowledges that the stipulation reached in the eviction proceeding required Coinmint to vacate the leased premises on or by March 22, 2019, and that it complied with this requirement. (*Id.* at 7-8.) It was also acknowledged at the preliminary injunction hearing that the state TRO had a term of 14 days. (Dkt. No. 30, Attach. 3, at 32-33.) Given that Coinmint therefore vacated the premises before the expiration of the state court TRO (and in fact was required to under the settlement agreement), it is not clear how Main Mill's decision to file (and then withdraw) a petition for preliminary injunction from this Court prejudiced Coinmint in terms of Coinmint's ability to remove items (including the transformer) from the property; whether or not this Court had granted Main Mill's request for a preliminary injunction (and, in fact, whether or not Main Mill ever filed a petition

28

for preliminary injunction), Coinmint was required to leave the rented premises before the expiration of the TRO. The Court therefore can see no reason to impose a requirement to post security where (a) no preliminary injunction or TRO was granted by this Court, (b) Coinmint was already barred from taking the transformer during the whole time between when the state court TRO was issued and when it was required to leave the rented premises (i.e., any injunction or lack thereof by this Court would not have changed that situation), and (c) Coinmint would have been unable to re-enter the leased premises to take the transformer without Main Mill's permission after March 22, 2019, whether or not a preliminary injunction issued by this Court was in place because it no longer had any legal right to enter those premises after that date.

As a final note, the Court finds that, even if it had found that Coinmint was entitled to sanctions, the Court would not have granted the requested attorneys' fees and costs because Coinmint has not provided any evidence (particularly contemporaneous time records) to establish that it actually incurred the requested amounts. *See Scott v. City of New York*, 626 F.3d 130, 132 (2d Cir. 2010) (noting that Second Circuit precedent "requires that all applications for attorney's fees be supported by contemporaneous records" with only narrow exceptions).

For all of the above reasons, the Court denies Coinmint's request for sanctions.

**ACCORDINGLY**, it is

**ORDERED** that Defendants' motion to dismiss (Dkt. No. 9) is **<u>GRANTED</u> in part** and **<u>DENIED</u> in part**; and it is further

**ORDERED** that Coinmint's motion for sanctions (Dkt. No. 30 of Member Case No. 8:19-CV-0328) is **<u>DENIED</u>**; and it is further

**ORDERED** that Coinmint's First Claim of fraudulent inducement against Jacobsma is

**DISMISSED**; and it is further

      **ORDERED** that Coinmint's Second Claim of breach of contract against Main Mill

**SURVIVES** Defendants' motion to dismiss; and it is further

      **ORDERED** that Defendant Jacobsma is **DISMISSED** from this action as a party.

Dated: August 26, 2019
      Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge